# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Statesboro Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 12:22 pm, May 14, 2014

In the matter of:          )
                           )          Chapter 11
MCTEER OIL COMPANY, INC.,  )
                           )          Case No. 13-60660-EJC
            *Debtor*.      )
                           )

In the matter of:                    )
                                     )          Chapter 11
MCTEER PROPERTY HOLDINGS, LLC,       )
                                     )          Case No. 13-60661-EJC
            *Debtor*.                )
                                     )

## OPINION AND ORDER GRANTING MOTIONS TO CONSOLIDATE

Before the Court is McTeer Oil Company, Inc.'s and McTeer Property Holdings, LLC's identical motions (dckt. 3) seeking the substantive consolidation of their pending chapter 11 cases.[1] In the alternative, the motions seek the joint administration of the cases. This Court has jurisdiction pursuant to sections 151, 157(a), and 1334(b) of title 28 of the United States Code and the United States District Court for the Southern District of Georgia's Order dated July 13, 1984, which refers all cases under title 11 of the United States Code to the bankruptcy judges in the district. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A). In accordance with Rule 7052 of the Federal Rules of Bankruptcy

---

[1] For this Order, citations to the docket in *In re McTeer Oil Co., Inc.*, No. 13-60660, will appear as "(*McTeer Oil*, dckt.)," citations to the docket in *In re McTeer Property Holdings, LLC*, No. 13-60661, will appear as "(*McTeer Property*, dckt.)," and citations to both dockets will appear simply as "(dckt.)."

Procedure, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

A consolidated evidentiary record was made, and the following facts were either proven or are the proper subject of judicial notice.[2]

A.   Introduction

Cecil Hud McTeer, III ("McTeer") has been in the convenience store business since 1993. He opened his first store in Millen, Georgia and grew the business to five locations at its zenith as summarized in Table 1 below.

TABLE 1: Store Locations

| Store | City (GA) | Real Estate Owner | Operator |
|-------|-----------|-------------------|----------|
| 1 | Millen | McTeer Oil | McTeer Oil |
| 2 & 4 | Millen/Waynesboro | Third-Party Lessors | [Closed 2010] |
| 3 | Augusta | McTeer Property | Dalpin, LLC (tenant) |
| 5 | Augusta | McTeer Property | RSS 2012, LLC (tenant) |

In 1993, McTeer formed a corporation, McTeer Oil Co., Inc. ("McTeer Oil"), through which to operate the business, and he later formed a limited liability company, McTeer Property Holdings, LLC ("McTeer Property"), to own some of the real estate. The two entities are the respective debtors in these cases and are the subject of the pending motions. As will be more fully described below, McTeer treated these entities as one

---

[2] *See* Fed. R. Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996). The Court takes judicial notice of every proof of claim that has been filed in both cases. (*McTeer Oil*, Hr'g Tr. Mar. 27, 2014, dckt. 100, at 105:3–7.)

AO 72A
(Rev. 8/82)

enterprise. The debtors now seek to have the Court consolidate their bankruptcy estates into one estate for purposes of their chapter 11 reorganizations.

B.    Procedural History

On December 2, 2013, McTeer Oil and McTeer Property filed separate voluntary chapter 11 petitions. (Dckt. 1.) The law firm of Merril & Stone, LLC of Swainsboro, Georgia represents both debtors. The debtors' respective petitions designate that each debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). McTeer Oil and McTeer Property each filed a Motion to Substantively Consolidate the Cases of McTeer Oil Company, Inc. and McTeer Property Holdings, LLC, or in the Alternative to Jointly Administer the Cases ("Motions to Consolidate") on December 2, 2013. (Dckt. 3.)

Notice of the Motions to Consolidate and the original date of the hearing was served on all parties in both cases. (*McTeer Oil*, Certificate of Service, dckt. 30; *McTeer Property*, Certificate of Service, dckt. 23.) The Court held a continued hearing on the motions on March 27, 2014.[3] At the hearing, McTeer testified on behalf of the debtors. No party in interest filed an objection to the Motions to Consolidate or appeared at the hearings to object to the substantive consolidation of the cases.

---

[3] The original hearing on the Motions to Consolidate and the first continued hearing held on February 12, 2014 were continued due to inclement weather.

AO 72A
(Rev. 8/82)

C.   Background

   1.   *Formation, Ownership, and Business Functions of the Debtors*

McTeer owns 100% of both debtors. (*McTeer Oil*, Dckt. 27, at 26; *McTeer Property*, Dckt. 20, at 25.) He has been the sole shareholder of McTeer Oil since that corporation was formed. (Ex. D-7; *McTeer Oil*, dckt. 100, at 49:12–16.) He is the president of the corporation and his mother, Mary Pat McTeer, is the secretary. (Ex. D-6; *McTeer Oil*, Hr'g Tr. Mar. 27, 2014, dckt. 100, at 50:6–14.) McTeer Oil was formed to operate a convenience store, gas station, and restaurant on 1.99 acres in Jenkins County, Georgia located at 353 Highway 25 South, Millen, Georgia ("Store 1"). (*McTeer Oil*, dckt. 100, at 52:16–19, 56:8.) McTeer Oil holds title to the real estate. (*Id.* at 52:20–21.) The corporation employs seven people to operate Store 1. (*Id.* at 67:19.)

Because his accountant advised him that it would be beneficial for tax purposes, McTeer established McTeer Property, a Georgia domestic limited liability company, in 2002. He is the managing member and has always been the only member of McTeer Property. (*Id.* at 50:18–19, 51:3–5, 52:22–25.) McTeer Property owns two properties: 1.96 acres in Richmond County, Georgia more commonly known as 1237 Gordon Highway, Augusta, Georgia 30901 ("Store 3"), which was acquired in 2003, and 0.88 acres in Richmond County, Georgia commonly known as 4150 Windsor Spring Road, Hephzibah, Georgia 30815 ("Store 5"), which was acquired in 2007. (*Id.* at 53:4–20, 55:3–15.)

After McTeer formed McTeer Property, he disregarded the separateness of the two entities in many respects, and each of the debtors assert that this "commingling of assets and business functions" supports finding that substantive consolidation is warranted. For example, McTeer Property never had a bank account until it opened a debtor-in-possession account for this bankruptcy case. (*Id.* at 72:16–19.) Any revenue that might have been properly attributed to McTeer Property was deposited into McTeer Oil's account. (*Id.* at 73:1–20, 74:6–14, 79:10–19.) Likewise, the expenses of both entities were paid out of McTeer Oil's account. McTeer Property has never made a payment from an account in its name to creditors. (*Id.*) McTeer testified that separate records for income and expenses of the entities were not maintained.[4] (*Id.* at 74:11–14, 79:10–19.) Additionally, McTeer Property has never had a single employee. (*Id.* at 66:22–24.) When McTeer Property needed work done, it was performed by McTeer Oil's employees who never received compensation from McTeer Property. (*Id.* at 68:9 to 69:12.) McTeer testified that transfers may or may not have occurred between McTeer Property and McTeer Oil, but he has no documentation of them. (*Id.* at 102:5–20.)

2.    *Current Assets of the Debtors*

The assets of the debtors, according to their respective schedules, have been summarized in Table 2 below.

---

[4] As a single member limited liability company, McTeer Property is not required to file a separate federal tax return. Instead, McTeer Property's profits and losses pass through to McTeer and were reported in McTeer's individual tax returns. (Exs. D-8, D-9.)

TABLE 2: Debtors' Assets

| Schedules A (combined): | McTeer Oil Value | McTeer Property Value |
|---|---|---|
| Store 1 | $106,698.00 | |
| Store 3 | | $558,176.00 |
| Store 5 | | $356,396.00 |
| | | |
| Schedules B (combined): | McTeer Oil Value | McTeer Property Value |
| Store 1: Queensborough Bank Account | $1,500.00 | |
| Store 1: Accounts Receivable | $6,000.00 | |
| Store 1: Office Equipment | $10,020.00 | |
| Store 1: Machinery & Fixtures | $4,125.00 | |
| Store 1: Inventory | $18,000.00 | |
| Store 3: Office Equipment | | $3,725.00 |
| Store 5: DOT Condemnation | $131,500.00 | |
| Store 5: Office Equipment | $5,400.00 | |
| | | |
| Total Assets: | $146,343.00 | $1,055,197.00 |
| Total Liabilities: | $1,908,529.25 | $1,776,641.84 |

### 3.  Leases

McTeer Oil leased Store 3 from McTeer Property from 2003 through 2010, although there was no written lease between the two entities. (*Id.* at 70:6–13.) McTeer Oil never paid rent to McTeer Property but did make some payments to the lienholder, Queensborough National Bank and Trust Company ("Queensborough"). (*Id.* at 70:14 to 71:9.)

McTeer Oil also leased Store 5 from McTeer Property from 2007 to

October 2012. (*Id.* at 71:10–12.) A written agreement was drafted for the lease of Store 5 by McTeer Oil, but it was not signed by McTeer Oil and McTeer Property. (Ex. D-3.) McTeer Oil never paid rent to McTeer Property but did make some payments to the lienholders, LSCG Fund 15, LLC and the U.S. Small Business Association ("SBA"). (*Id.* at 71:13 to 72:15.)

Store 3 is currently leased to Dalpin, LLC, ("Dalpin") and that lease is between McTeer Oil as the landlord and Dalpin as the tenant. (Ex. D-4.) Store 5 is currently leased to RSS 2012, LLC ("RSS"), and that lease is between McTeer Oil as the landlord and RSS as the tenant. (Ex. D-5.) However, McTeer Property, not McTeer Oil, is the owner of both Store 3 and Store 5, and McTeer Oil has not contracted with McTeer Property to obtain the right to lease Store 3 and Store 5. (*McTeer Oil*, dckt. 100, at 73:24 to 74:5, 75:5–11.) According to McTeer, the leases were placed in McTeer Oil's name because "to [him], it was only McTeer Oil. [He] never really differentiated [between] the two." (*Id.* at 74:23–24.) All prepetition rent payments from Dalpin and RSS were made to McTeer Oil and used by McTeer Oil in the day-to-day operation of its business and for the payment of creditors of McTeer Oil and McTeer Property.[5] (*Id.* at 73:1–20, 74:6–14.)

---

[5] All rent paid since the petition date has been paid to McTeer Property and placed in McTeer Property's debtor-in-possession account. (*McTeer Oil*, dckt. 100, at 76:5–23.)

AO 72A
(Rev. 8/82)

4.   *Liabilities*

The debtors have several joint obligations, which have been summarized in Table 3 and Table 4 below.

TABLE 3: Jointly Owed Secured Obligations

| Creditor's Name | McTeer Oil Claim No. | McTeer Property Claim No. | Claim Amount |
|---|---|---|---|
| SBA | 11 | 1.2 | $350,215.00 |
| SBA | 10 | 5 | $484,487.37 |
| Queensborough | 8 | 4 | $750,092.34 |
| Queensborough | 7 | 3 | $840,391.45 |
| LSCG Fund 15, LLC | 12 | 6 | $531,172.40 |

TABLE 4: Jointly Owed Unsecured Obligations

| Creditor's Name | McTeer Oil Claim No. | McTeer Property Claim No. | Claim Amount |
|---|---|---|---|
| H.T. Hackney | Schedule F | Schedule F | $95,852.50 |
| Jones, Jones & Davis | Schedule F | Schedule F | $4,800.00 |

Some of the debts in Table 3 are "joint" because one of the debtors guaranteed the debt of the other. For example, McTeer Oil is the borrower and McTeer Property is the guarantor of the secured obligations to Queensborough on Store 1. (*McTeer Oil*, claim 7; *McTeer Property*, claim 3.) McTeer Property is the borrower and McTeer Oil is the guarantor of the secured obligations to Queensborough on Store 3. (*McTeer Oil*, claim 8; *McTeer Property*, claim 4.) The debtors are jointly obligated on a note, which McTeer guaranteed, to the U.S. Small Business Administration ("SBA") secured by Store 5 and personal property located therein. (*McTeer Oil*, claim 10; *McTeer*

*Property*, claim 5.)

On July 15, 2013, McTeer, McTeer Oil, and McTeer Property entered into a forbearance agreement with LSCG Fund 15, LLC, which bought the note from Regions Bank. (Ex. D-2; *McTeer Oil*, claim 12; *McTeer Property*, claim 6.) Under that agreement, formerly separate secured debts of McTeer, McTeer Oil, and McTeer Property were cross-collateralized. (Ex. D-2.) The debtors also are jointly obligated on a note, which McTeer guaranteed, to the SBA secured by Store 5 and personal property located therein. (*McTeer Oil*, claim 11; *McTeer Property*, claim 1.2.) The debtors also have a joint obligation to H.T. Hackney arising from the purchase of inventory as well as a joint debt to their accounting firm. (*McTeer Oil*, Schedule F, dckt. 27; *McTeer Property*, Schedule F, dckt. 20.)

As shown in Table 5 and Table 6 below, McTeer Property has few separate debts and McTeer Oil appears to have several.

TABLE 5: McTeer Property's Separate Obligations

| Creditor's Name | Debt Type | Claim No. | Claim Amount |
|---|---|---|---|
| Richmond County Tax Commissioner | Priority | 2 | $20,604.00 |
| Ga. Department of Revenue | Priority | Schedule E | $10,022.46 |

TABLE 6: McTeer Oil's Separate Obligations

| Creditor's Name | Debt Type | Claim No. | Claim Amount |
|---|---|---|---|
| J & E Oil | Secured | Schedule D | $8,000.00 |
| Ga. Department of Revenue | Secured | 5 | $29,421.24 |

| Ga. Department of Revenue | Priority | 5 | $92,791.24 |
|---|---|---|---|
| Internal Revenue Service | Priority | 4.3 | $200.00 |
| Coca-Cola | Unsecured | Schedule F | $2,089.02 |
| Cecil McTeer Jr. | Unsecured | Schedule F | $143,000.00 |
| Cecil McTeer Jr. | Unsecured | Schedule F | $189,000.00 |
| AT&T Mobility | Unsecured/Disputed | 1 | $1,034.37 |
| American Info Services | Unsecured/Disputed | 3 | $529.27 |
| American Info Services | Unsecured/Disputed | 2 | $424.28 |
| Nestle Direct Store | Unsecured/Disputed | 6 | $304.80 |

Only McTeer Property owes property taxes to Richmond County, Georgia. The Georgia Department of Revenue has asserted an approximately $10,000 sales tax claim against McTeer Property; however, as reflected in Table 2, McTeer Oil as the operating entity apparently owned the inventory for which the sales tax was assessed. (*McTeer Oil*, dckt. 100, at 88:18 to 89:6.)

McTeer Oil's individual creditors are the Georgia Department of Revenue for unpaid sales taxes,[6] the Internal Revenue Service for unpaid employment taxes, Coca-Cola for an unsecured vendor claim, J & E Oil Co., other creditors holding disputed unsecured debts, and McTeer's father.

McTeer Oil filed objections to the claims of AT&T Mobility, American

---

[6] McTeer Oil's and McTeer Property's separate debts to the Georgia Department of Revenue for Store 1 (totaling about $122,000) currently prevents the sale of lottery tickets, beer, and wine at that location. (*Id.* at 94.)

⌐AO 72A
(Rev. 8/82)

Info Services, and Nestle Direct Store based on the grounds that each claim was either paid in full or not an obligation of McTeer Oil. (Dckts. 91–94.) The Court has not ruled on these claim objections.

When the Waynesboro store and one of the stores in Millen ("Store 2" and "Store 4") were closed in 2010, McTeer Oil had debts to vendors that neither it nor McTeer Property could pay. McTeer's father, Cecil McTeer Jr., borrowed $143,000 from Regions Bank and $189,000 from Queensborough, putting up collateral and signing a note, and used the proceeds to pay off the vendors. (*Id.* at 61:12–17, 66:12–14.) McTeer Oil did not sign a note in favor of McTeer's father or the bank for these debts. During the year prior to filing bankruptcy, McTeer Oil paid $1,650 to Regions Bank and $2,000 to Queensborough each month for the debts of McTeer's father that were incurred to pay off McTeer Oil's debts to vendors. (*Id.* at 66:12–14.)

## CONCLUSIONS OF LAW

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") do not expressly authorize substantive consolidation; however, the United States Court of Appeals for the Eleventh Circuit has held that bankruptcy courts may order substantive consolidation pursuant to their general equitable powers. *Eastgroup Props.*, 935 F.2d at 248 (citing *Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 & n.1 (2d Cir. 1988)).

Substantive consolidation merges the assets and liabilities of the debtor entities into a single bankruptcy estate that all holders of allowed claims are required to look to for distribution. *See In re Hemingway Transp.*, 954 F.2d 1, 11–12 (1st Cir. 1992). In contrast, joint administration is designed "to promote procedural convenience and cost efficiencies which do not affect the substantive rights of claimants of the respective debtor estates . . . ." *Id.* Bankruptcy Rule 1015(a) provides for the substantive consolidation of cases involving the *same* debtor, but it does not specifically provide for the consolidation of the estates of different entities. Bankruptcy Rule 1015(b) provides the rules for the joint administration of bankruptcy cases. Because I will grant the motion to substantively consolidate the debtors' bankruptcy estates, which accomplishes everything that ordering the joint administration of the cases would and more, I decline to address the alternative relief sought in the Motions to Consolidate.

A.   Legal Standard for Substantive Consolidation

Because a court's only source of authority to order substantive consolidation is its general equitable powers and consolidation tends to redistribute the amount and likelihood of a distribution among the creditors of the consolidated entities, some courts have insisted that substantive consolidation "be invoked sparingly because of the possibility of unfair treatment of creditors." *Fed. Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992) (internal quotation marks omitted). I agree with those courts. This redistribution occurs because the consolidated entities almost certainly will

have different debt-to-asset ratios, and the debtors in this case are no exception as shown in Table 2 above. *See Eastgroup Props.*, 935 F.2d at 248. As the United States Court of Appeals for the Second Circuit has stated: "Only through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors." *Id.* (citing *Augie/Restivo*, 860 F.2d at 518; *Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.)*, 810 F.2d 270, 276 (D.C. Cir. 1987)).

        In light of the above, the Court must remain mindful that the "basic criterion . . . to evaluate a proposed substantive consolidation is whether the economic prejudice of continued debtor separateness outweighs the economic prejudice of consolidation." *Eastgroup Props.*, 935 F.2d at 249 (quoting *Snider Bros.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)) (internal quotation marks omitted). To make this determination, the Eleventh Circuit Court of Appeals adopted a standard, which this Court must apply, to determine whether substantive consolidation is "warranted." *Id.*; *In re Int'l Mgmt. Assocs., LLC*, No. 06-623966 (Bankr. N.D. Ga. Apr. 17, 2008), ECF No. 607 (ordering substantive consolidation where the bankruptcy court found that the standard for substantive consolidation set forth in *Eastgroup Properties* had been met). First, the proponent of substantive consolidation must establish a prima facie case by showing that "(1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Eastgroup*

*Props.*, 935 F.2d at 249.

Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that "(1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* If an objecting creditor satisfies its burden, "the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm." *Id.* (internal quotation marks omitted).

B.    Prima Facie Case for Consolidation

The Eleventh Circuit Court of Appeals suggests that "the proponent of consolidation may want to frame his argument" by analyzing the following factors:

(1) The presence or absence of consolidated financial statements.

(2) The unity of interests and ownership between various corporate entities.

(3) The existence of parent and intercorporate guarantees on loans.

(4) The degree of difficulty in segregating and ascertaining individual assets and liabilities.

(5) The existence of transfers of assets without formal observance of corporate formalities.

(6) The commingling of assets and business functions.

(7) The profitability of consolidation at a single physical location.

*Id.* at 249 (quoting *In re Vecco Constr. Indus.*, 4 B.R. 407, 410 (Bankr. E.D. Va. 1980)). As the court of appeals explained, these factors are merely examples of what will be useful information to courts and no one factor will be determinative. The Court will now analyze each factor in turn.

    1.    *The Presence or Absence of Consolidated Financial Statements*

The record does not indicate whether there are any consolidated financial statements. McTeer Property does not file a tax return. *See supra* note 4; (exs. D-8, D-9). McTeer Oil files a corporate tax return, which includes a Schedule L (Balance Sheet) as part of Form 1120. (Ex. D-10; *McTeer Oil*, dckt. 100, at 78:15–21.)

    2.    *The Unity of Interests and Ownership Between Various Corporate Entities*

McTeer has always owned 100% of both McTeer Oil and McTeer Property during their entire existence. McTeer also has exercised 100% control over both debtors.

    3.    *The Existence of Parent and Intercorporate Guarantees on Loans*

McTeer Oil and McTeer Property are jointly obligated to the secured creditors of all three stores despite title to the real property for Store 1 only being in McTeer Oil's name and title to Store 3 and Store 5 only being in McTeer Property's name. *See supra* Table 3. McTeer has also guaranteed some of these obligations. (*E.g.*, ex. D-2.)

4.    *The Degree of Difficulty in Segregating and Ascertaining Individual Assets and Liabilities*

According to McTeer, corporate formalities were utterly disregard except for income tax purposes. As a result, he did not keep records that would facilitate unwinding what payments should have been made from and to which entity.

Additionally, the debtors argue that some debts have been asserted against the wrong entity due to creditor confusion. According to McTeer, McTeer Property never operated any convenience store, instead acting only as a landlord for the operating entities. Yet, the Richmond County Tax Assessor has filed a Proof of Claim against McTeer Property for inventory taxes, and the Georgia Department of Revenue asserts a prepetition claim of $10,022.46 against McTeer Property for sales taxes.

5.    *The Existence of Transfers of Assets Without Formal Observance of Corporate Formalities*

McTeer Oil and McTeer Property disregarded the corporate formalities of the entities in transferring assets. McTeer Property never had a bank account until its pending bankruptcy case and instead used McTeer Oil's account. McTeer Oil used funds in this account to pay the obligations of both debtors without regard to the source of the funds.

Another example of transferring assets without regard to corporate

formalities was shown respecting transfers involving Store 3 and Store 5. McTeer Oil

entered into agreements with third parties to lease these properties (exs. D-3, D-4)

notwithstanding the fact that the properties were titled in McTeer Property's name and

there was no executed agreement from McTeer Property to McTeer Oil leasing the stores.

(Ex. D-5.) Although Table 2 appears to indicate that the debtors have very different debt-

to-asset ratios, it is unclear what these ratios would be if corporate formalities had been

observed.

6.    *The Commingling of Assets and Business Functions*

The debtors commingled assets and business functions by sharing

prepetition bank accounts, employees, and offices. McTeer Oil's bank accounts were used

to pay operating expenses, including but not limited to payments to the lienholders of the

real estate, taxing authorities, and unsecured creditors such as vendors and McTeer's

father. The commingled funds were used to pay obligations of the debtors without regard

to the source of the funds. Moreover, McTeer Oil performed the business functions of

McTeer Property because it rented the stores to third parties.

McTeer Property has no employees. McTeer, his mother, and employees of

McTeer Oil performed all of the required work for McTeer Property. McTeer Oil paid for

services regardless of the entity for which the services were performed.

7. *The Profitability of Consolidation at a Single Physical Location.*

Additionally, McTeer Oil and McTeer Property operate out of the same location, which is 353 Highway 25 South, Millen, Georgia. For everything other than tax purposes, the debtors appear to operate as one entity. *See In re Vecco*, 4 B.R. at 411.

After analyzing the case in light of the above factors, I find that the debtors have made a prima facie case for consolidation. First, it has been clearly established that there is a substantial identity between the debtors. Secondly, the debtors have met their burden of establishing that consolidation is necessary to avoid some harm or to realize some benefit. *Eastgroup Props.*, 935 F.2d at 249.

Substantive consolidation would create a benefit for creditors by reducing administrative costs. *See In re F.W.D.C., Inc.*, 158 B.R. 523, 526 (Bankr. S.D. Fla. 1993) (finding that the administrative cost savings of only having to file one disclosure statement rather than six was "of sufficient benefit to all of the Debtors' creditors"). Although in this case only one less disclosure statement and plan will need to be filed in the event that consolidation is granted, the commingling of the assets by McTeer Oil and McTeer Property creates innumerable avoidable transfer issues between the debtors that could result in costly litigation absent substantive consolidation. This problem is exacerbated by the lack of written agreements between the debtors and inadequate record keeping. Moreover, attempting to unwind the transactions through claims by each debtor

against the other would likely result in no practical advantage. Substantive consolidation would eliminate these intercorporate liabilities, simultaneously eliminating the administrative costs associated with pursuing any claims between the entities. *See Eastgroup Props.*, 935 F.2d at 248. Currently, the same law firm represents both debtors. Litigating claims between the debtors would result in the need for separate representation, which would again increase administrative costs.

C.   Because the Debtors Have Made a Prima Facie Case, the Burden Shifts

Because the burden has shifted, an objecting creditor must now show that is has relied on the separate credit of one of the debtors and that it would be prejudiced by the substantive consolidation of the debtors. *Id.* at 249. Despite receiving notice, no creditor of either of the debtors has objected to the Motions to Consolidate. Therefore, it is appropriate for the Court to grant the debtors' motions and to order the substantive consolidation of their cases. *Id.*

D.   Conclusion

In granting the Motions to Consolidate, the Court finds that the "basic criterion" to determine if substantive consolidation is proper, namely "whether the economic prejudice of continued debtor separateness outweighs the economic prejudice of consolidation," is satisfied in this case. *Id.* (quoting *Snider Bros.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)) (internal quotation marks omitted). Because the debtors

internally acted and held themselves out to be a unit, it would be more unfair to creditors to now treat the debtors' bankruptcy estates as separate than to consider their bankruptcy estates as one. As explained above, the debtors' respective debt-to-asset ratios do not reflect the economic realities of the enterprises. The risk of harm to any specific creditor due to consolidation is reduced in this case because the debtors appear to have an insignificant amount of unencumbered assets.

Under the facts of this case, I conclude that the demonstrated economic benefits to creditors of consolidation outweigh the harm that consolidation will cause to creditors. *See id.* Again, substantive consolidation is to be "invoked sparingly." *Colonial Realty*, 966 F.2d at 61 (internal quotation marks omitted). But, in cases such as this one where no creditor has objected, the debtors' burden is met by a prima facie case for substantive consolidation. *Eastgroup Props.*, 935 F.2d at 249.

## O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that the Motions to Consolidate (dckt. 3) are GRANTED. The bankruptcy estates of McTeer Oil Company, Inc. and McTeer Property Holdings, LLC are consolidated into one bankruptcy estate. As a result, the assets of the debtors will be treated as common assets, and the claims of creditors of each debtor will be paid from the common fund.

Accordingly, it is further ORDERED that:

(1)  all assets and all liabilities of the debtors will be treated as though the debtors were merged;

(2)  any obligation of either debtor will be deemed a single obligation of the now consolidated debtors;

(3)  any claims filed or to be filed in connection with any such obligation or guarantee will be deemed one claim against the consolidated debtors;

(4)  each and every claim filed in the individual case of any of the debtors will be deemed filed against the consolidated debtors in the consolidated case;

(5)  for purposes of determining the availability of the right to setoff under section 553 of the Bankruptcy Code, the debtors will be treated as a single entity, meaning that debts due from third party creditors to either debtor may be set off against the debts of either debtor (subject to the other provisions of section 553);

(6)  the creditors of the consolidated entities are combined for the purpose of voting on reorganization plans;

(7)  the lead case will be *In re McTeer Oil Co., Inc.*, No. 13-60660;

(8)  a combined mailing matrix will be used for the cases. Combined notices will be sent to the creditors of the estates;

(9)  a single claims register will be maintained;

(10)  the Clerk is DIRECTED to move all claims filed in the Claims Register of *In re McTeer Property Holdings, LLC*, No. 13-60661 to the Claims Register of the lead

case;

(11)    any deviation from these procedures will be by order of the Court;

(13)    the Clerk is DIRECTED to provide a CM/ECF instruction in the docket of all of

the consolidated that creditors and parties in interest must now file all pleadings,

motions, claims, etc. under case number 13-60660; and

(12)    the following caption must be used on all pleadings, motions, operating reports,

and other papers served or filed in the cases:

```
                    UNITED STATES BANKRUPTCY COURT
                         Southern District of Georgia

In re:                          )
                                )       Chapter 11
MCTEER OIL COMPANY, INC.,       )
                   Debtor.      )       Lead Case No. 13-60660
                                )       (Substantively Consolidated)
                                )
McTeer Oil Company, Inc.,       )
             No. 13-60660       )
                                )
McTeer Property Holdings, LLC,  )
             No. 13-60661       )
                   Debtors.     )
                                )
```

Dated at Savannah, Georgia, this 14th day of May, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge